STATE of Indiana, Appellant–Plaintiff,

v.

Deborah LEFEVERS, Appellee–Defendant.

No. 79A02–0510–CR–996.

Court of Appeals of Indiana.

March 27, 2006.

Transfer Denied May 19, 2006.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, for Appellant.

Daniel J. Moore, Laszynski & Moore, Lafayette, for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

The State appeals the trial court's grant of Deborah Lefevers's motion to suppress. We reverse.

### Issue

The sole issue is whether the trial court properly granted Lefevers's motion to suppress.

### Facts

On January 24, 2003, Lafayette Police Department Officer Scott Swick received information from dispatch of an anonymous tip regarding a possibly intoxicated driver. After Officer Swick saw a vehicle matching the given license plate and make and model description, he began to follow it. He did not observe any erratic driving.

The driver, Lefevers, pulled into a convenience store parking lot. Officer Swick, who was alone, parked nearby but did not activate his emergency lights. He then approached Lefevers as she prepared to exit her vehicle, but while she was still sitting in the driver's seat, and began questioning her as to whether she had had anything to drink and whether she had made any erratic movements that might have led someone else to think she was intoxicated. Lefevers said she had had one glass of champagne to celebrate a business deal but that she had not been driving erratically. At some point while Lefevers was still in the car, Officer Swick noticed that her eyes were bloodshot and her speech was slurred. He asked Lefevers if she would submit to a breath test and she said she would. The test revealed a blood alcohol content of .13.

On February 3, 2003, The State charged Lefevers with operating with at least .08 grams of alcohol in her breath or blood, a Class C misdemeanor, operating while intoxicated with a previous OWI conviction, a Class D felony, and driving with a suspended license, a Class A infraction. On May 10, 2005, Lefevers filed a motion titled a "Motion to Dismiss." App. p. 19. The motion claimed that all of the evidence in the case was the result of an "unlawful traffic stop" and should be suppressed. *Id.* The trial court conducted a hearing on the motion on June 27, 2005, and issued its final ruling granting the "Motion to Dismiss" on August 4, 2005. The State now appeals.

### Analysis

We first address the nature of the motion originally filed by Lefevers and the specific relief granted by the trial court, which was to dismiss the State's cause of action against Lefevers. On appeal, Lefevers "concedes that the Defendant's motion would have been more properly titled a Motion to Suppress and that Suppression rather than dismissal is the appropriate relief." Appellee's Br. p. 8. Even if it would appear that the granting of a suppression motion is fatal to the State's case, it is improper for a trial court to order

dismissal of a prosecution on the basis of an alleged insufficiency of the evidence. *See State v. Nesius*, 548 N.E.2d 1201, 1204–05 (Ind.Ct.App.1990). Thus, the most that should have happened based on Lefevers's motion was the suppression of evidence, not dismissal of the State's case. *See id.*

Turning now to the merits, the State is appealing from a negative judgment because the trial court effectively granted a motion to suppress evidence seized without a warrant. *See State v. Carlson*, 762 N.E.2d 121, 125 (Ind.Ct.App.2002). The State, therefore, must show that the trial court's ruling on the suppression motion was contrary to law. *Id.* "We will reverse a negative judgment only when the evidence is without conflict and all reasonable inferences lead to a conclusion opposite that of the trial court." *Id.* We neither reweigh the evidence nor judge the credibility of witnesses and must consider only the evidence most favorable to the judgment. *Id.* In the present case, the only evidence presented was the testimony of Officer Swick; thus, there was no competing evidence to weigh.

 It is true that an anonymous tip alleging that a person is or has been engaged in illegal behavior generally is not, by itself, sufficient to give rise to probable cause or even reasonable suspicion to seize that person. *See Sellmer v. State*, 842 N.E.2d 358, 361 (Ind.2006). "[A]n anonymous telephone tip, absent any independent indicia of reliability or any officer-observed confirmation of the caller's prediction of the defendant's future behavior, is not enough to permit police to detain a citizen and subject him or her to a *Terry* stop and the attendant interruption of liberty required to accomplish it." *Washington v. State*, 740 N.E.2d 1241, 1246 (Ind. Ct.App.2000), *trans. denied.* Independent corroboration of a tip requires validating

the informant's knowledge as "reliable in its assertion of illegality," in contrast to information that might be relayed to police by a prankster or a police officer acting in bad faith. *Id.* (quoting *Florida v. J.L.*, 529 U.S. 266, 272, 120 S.Ct. 1375, 1379, 146 L.Ed.2d 254 (2000)).

 The State does not argue that the anonymous tip relayed to Officer Swick provided reasonable suspicion to stop Lefevers, nor did he observe any erratic driving that might have corroborated the tip. Therefore, the key question in this case is when, if at all, Officer Swick "seized" Lefevers during the course of his investigation into the anonymous tip. This court has explained that there are three levels of police investigation, two that implicate the Fourth Amendment to the United States Constitution and one that does not.

First, the Fourth Amendment requires that an arrest or detention for more than a short period be justified by probable cause. Probable cause to arrest exists where the facts and circumstances within the knowledge of the officers are sufficient to warrant a belief by a person of reasonable caution that an offense has been committed and that the person to be arrested has committed it. Second, it is well-settled Fourth Amendment jurisprudence that police may, without a warrant or probable cause, briefly detain an individual for investigatory purposes if, based on specific and articulable facts, the officer has a reasonable suspicion that criminal activity "may be afoot." Accordingly, limited investigatory stops and seizures on the street involving a brief question or two and a possible frisk for weapons can be justified by mere reasonable suspicion. Finally, the third level of investigation occurs when a law enforcement officer makes a casual and brief inquiry of a citizen which involves neither an arrest nor a stop. In this

type of "consensual encounter" no Fourth Amendment interest is implicated.

*Overstreet v. State,* 724 N.E.2d 661, 663 (Ind.Ct.App.2000), *trans. denied* (citations omitted).

■■■■ In *Overstreet,* this court held there was no "stop" or "seizure" of a defendant where the defendant pulled into a gas station and was fueling his vehicle, and an officer pulled his vehicle behind the defendant without activating the lights, approached him, asked for identification, and questioned him about some suspicious activity the officer had observed. *Id.* at 664. We noted, "Not every encounter between a police officer and a citizen amounts to a seizure requiring objective justification." *Id.* Under the Fourth Amendment, a person is "seized" only when, by means of physical force or a show of authority, his or her freedom of movement is restrained. *United States v. Mendenhall,* 446 U.S. 544, 553, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980). Examples of circumstances that might indicate a seizure where the person did not actually attempt to leave the scene would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. *Id.* at 554, 100 S.Ct. at 1877. "In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person." *Id.* at 555, 100 S.Ct. at 1877.

■■■■ We conclude in the present case, much like in *Overstreet,* that Officer Swick did not "stop" or "seize" Lefevers when, of her own volition, she pulled into the convenience store parking lot. Also as in *Overstreet,* the mere fact that Officer Swick then approached Lefevers and began talking to her does not constitute a "seizure." He had not activated his emergency lights and he did not summon her to him. Initially, he was the only officer on the scene, which was outside a public place. There is no evidence that Officer Swick ever displayed a weapon, touched Lefevers, or used a threatening tone of voice in speaking with her.[1]

We also conclude that the facts of this case are different from those recently analyzed by our supreme court in *Sellmer.* There, police received an anonymous tip that there was marijuana in the defendant's automobile; as in this case, the tip by itself did not provide reasonable suspicion of criminal activity. Also as in this case, police approached the defendant in a public area and began questioning her about the tip. Eventually, police obtained consent from the defendant to search the car, which revealed a large quantity of marijuana.

The *Sellmer* court held that the evidence had to be suppressed. *Id.,* 842 N.E.2d at 365. It reached this conclusion on the

---

1. We acknowledge a recent opinion from this court, *Powell v. State,* 841 N.E.2d 1165 (Ind. Ct.App.2006). There, a different panel of this court held that there was not sufficient reasonable suspicion to justify an investigatory stop of a suspected drunk driver on the basis of an anonymous tip that, as in this case, only related the vehicle's make, model, and license plate number and alleged that the vehicle's driver may have been intoxicated. *See* 841 N.E.2d at 1169. There appears to have been no question in that case that there was a "stop" or "seizure" of the defendant, where the police officer pulled up directly behind the defendant's vehicle as he was beginning to back out of a parking space. *See id.* at 1166. Also, the State apparently made no argument that there was no "stop" in that case. We do not disagree with *Powell* 's holding or result and simply note that the facts and arguments in this case are different.

basis that the defendant was "in custody" or "under arrest" at the time she gave consent to search her vehicle and, therefore, the police were required but failed to advise her of her right under *Pirtle v. State,* 263 Ind. 16, 323 N.E.2d 634 (1975), to have the presence and advice of counsel before consenting to the search. *Id.* Six factors in combination led the court to conclude that the defendant was "under arrest" when she consented to the search: (1) police had asked her to consent to the search three to five times before she finally consented; (2) police had asked her potentially incriminating questions regarding whether there were any drugs in the car; (3) police had told her that it was in her best interest to cooperate with them; (4) police had told her she would be free to leave *if* she consented to the search and it revealed nothing; (5) the defendant had asked the police multiple questions regarding her rights and the police had responded that it was in her best interest to cooperate; and (6) the defendant had specifically asked whether she had to consent to the search and the police again responded that it would be in her best interest to cooperate if she had nothing to hide. *Id.,* 842 N.E.2d at 363–64.[2]

In the present case, the only *Sellmer* factor regarding the initial discussion between Officer Swick and Lefevers before she consented to the breath test and exited her vehicle that would weigh in favor of her being "in custody" at that time was that Officer Swick had asked Lefevers potentially incriminating questions regarding the anonymous tip and whether she had in fact been operating while intoxicated. There is no evidence that Lefevers was reluctant to consent to the test or had to be asked multiple times to do so, no evidence that Lefevers was told that it was in her "best interest" to cooperate or words to that effect, and no evidence that Officer Swick evaded answering questions from Lefevers regarding her constitutional rights. We do not believe *Sellmer* dictates the result here.

It is conceivable that at some point in Officer Swick's questioning, Lefevers was "seized" within the meaning of the Fourth Amendment. We believe, however, that the earliest point at which this might have occurred would have been when Officer Swick asked Lefevers if she would submit to a breath test and requested that she exit her car.[3] *See Johnson v. State,* No. 49A02–0410–CR–901, 841 N.E.2d 673 (Ind. Ct.App. Dec.30, 2005) (holding defendant clearly was seized when police ordered him to exit car). By that point, however, Officer Swick had obtained enough information to establish reasonable suspicion that

**2.** Although *Sellmer* expressly was decided on the basis that the police erred in not giving a *Pirtle* advisement because the defendant was "in custody," the facts of the case and much of the language in the opinion also would seem to suggest that the defendant's consent to the search was coerced and not voluntarily given. *See Sellmer,* 842 N.E.2d at 364 ("we conclude that a reasonable person under the same circumstances as those in which Sellmer found herself would believe either that she was under arrest or, at least, that *she was not free to resist the entreaties of the police.*") (emphasis added). A consent to search must be freely and voluntarily given and cannot be the result of fraud, duress, fear, intimidation, or mere submission to the supremacy of the law. *See Ackerman v. State,* 774 N.E.2d 970, 975 (Ind.Ct.App.2002), *trans. denied.*

**3.** Even this proposition might be open to debate. *See Mendenhall,* 446 U.S. at 557–58, 100 S.Ct. at 1879 (holding that search of defendant's person "was not preceded by an impermissible seizure of her person" where DEA agents approached her in airport concourse and asked a few questions, and she then voluntarily accompanied them to a separate office and voluntarily consented to the search). Lefevers has never argued that her consent to the breath test was involuntary.

Lefevers had been driving while intoxicated.

■■■■ "The ultimate determination of reasonable suspicion is reviewed de novo." *State v. Ritter*, 801 N.E.2d 689, 691 (Ind. Ct.App.2004), *trans. denied.* "Reasonable suspicion exists where the facts known to the officer and the reasonable inferences therefrom would cause an ordinarily prudent person to believe that criminal activity has or is about to occur." *Bridgewater v. State*, 793 N.E.2d 1097, 1099 (Ind.Ct. App.2003), *trans. denied.* Although reasonable suspicion requires more than inchoate and unparticularized hunches, it is a less demanding standard than probable cause and requires considerably less proof than that required to establish wrongdoing by a preponderance of the evidence. *Id.* at 1100. "Reasonable suspicion is determined on a case-by-case basis by looking at the totality of the circumstances." *Id.*

■■■■ Here, there was an anonymous tip that a car matching Lefevers's was being driven by an intoxicated individual. This information was partially corroborated by Officer Swick when he observed, while talking to Lefevers, that her eyes were bloodshot and her speech was slurred, both of which are indicative of alcohol use. These observations were made before Lefevers exited the car. Officer Swick testified, "I noted in my report that her speech was slurred and her eyes were red, *then* I asked her to step out of the car." Tr. p. 9 (emphasis added).[4] We conclude that these observations, especially when coupled with the tip, provided sufficient reasonable suspicion of criminal activity by Lefevers and warranted any possible seizure of her by Officer Swick after the observations were made. *See Kenworthy*

*v. State*, 738 N.E.2d 329, 332 (Ind.Ct.App. 2000), *trans. denied* (holding that police officer's detection of alcohol on breath of driver warranted continued investigation and detention after original justification for traffic stop no longer existed). In sum, we hold that the evidence presented to the trial court leads to the conclusion that Officer Swick at no time violated Lefevers's Fourth Amendment protection against unreasonable searches and seizures.

■■■■ Lefevers also claims that the evidence against her was obtained in violation of the Indiana Constitution's own prohibition on unreasonable searches and seizures that is found in Article 1, Section 11 of that document. "The legality of a governmental search under the Indiana Constitution turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances." *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind. 2005). The totality of the circumstances requires consideration of both the degree of intrusion into the subject's ordinary activities and the basis upon which the officer selected the subject of the search or seizure. *Id.* at 360. Although there may be other relevant considerations under the circumstances, the reasonableness of a search or seizure turns on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs. *Id.* at 361.

■■■■ Here, Officer Swick identified Lefevers as a target for investigation because of an anonymous tip alleging that she was driving while intoxicated; he did

4. After Lefevers exited the car, Officer Swick noticed the smell of alcohol on her breath for the first time. We have excluded consideration of that observation from our reasonable suspicion determination.

not decide to approach Lefevers completely at random or on the basis of no information whatsoever. Such information by itself would not have justified any forcible action by Officer Swick to stop or detain Lefevers. Initially, however, Officer Swick did not engage in any such action. Instead, Officer Swick acted reasonably and in a limited fashion in approaching Lefevers after she herself had stopped in a public place. Police officers should not be required to avoid all contact with citizens simply because they do not yet have a firm evidentiary basis to suspect a person of wrongdoing. Instead, they may engage in limited interaction with citizens, short of seizing the individual, to help determine whether further investigation is or is not warranted.

Officer Swick's initial interaction with Lefevers was limited, and there is no evidence that he was threatening in any way. During the course of that interaction, he noticed that Lefevers's eyes were red and her speech was slurred. Given those observations and the anonymous tip that was relayed to him, Officer Swick was permitted to continue his investigation into whether Lefevers had been driving while intoxicated. It was completely reasonable under the circumstances to ask her if she would submit to a breath test. The only evidence in the record is that Lefevers readily and voluntarily agreed to take the test, without undue pressure from Officer Swick. Under the undisputed facts and circumstances of this case, we conclude that the course and conduct of Officer Swick's investigation of Lefevers was reasonable and permissible under Article 1, Section 11 of the Indiana Constitution.

### Conclusion

Officer Swick's conduct in this case violated neither the Fourth Amendment to the United States Constitution nor Article 1, Section 11 of the Indiana Constitution.

The trial court's ruling ordering suppression of evidence and dismissal of the State's case was contrary to law. We reverse.

Reversed.

SHARPNACK, J., and RILEY, J., concur.