## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 24 2018, 7:12 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| State of Indiana, <br> *Appellant-Plaintiff*, <br><br> v. <br><br> Deana Lane Gaddy, <br> *Appellee-Defendant*. | May 24, 2018 <br><br> Court of Appeals Case No. <br> 10A01-1712-CR-2894 <br><br> Appeal from the Clark Circuit Court <br><br> The Honorable Joseph P. Weber, Judge <br><br> Trial Court Cause No. <br> 10C03-1709-CM-1642 |

**Brown, Judge.**

[1] The State appeals the trial court's order granting a motion to suppress filed by Deana Lane Gaddy. The State raises one issue which we revise and restate as whether the trial court erred in granting Gaddy's motion to suppress. We reverse and remand.

## Facts and Procedural History

[2] On September 7, 2017, the State charged Gaddy with: Count I, operating a vehicle while intoxicated as a class C misdemeanor; and Count II, operating a vehicle while intoxicated endangering a person as a class A misdemeanor. That same day, the trial court entered an order titled "FINDING OF PROBABLE CAUSE" which states:

> An Information and Probable Cause Affidavit having been filed in this cause by the State of Indiana, the Court now finds and determines that there is probable cause to believe that the offense(s) set forth in the information have been committed by [Gaddy]. IT IS ORDERED that the defendant be brought before this Court for an Initial Hearing promptly and without unnecessary delay.

Appellant's Appendix Volume II at 13.

[3] On September 14, 2017, Gaddy filed a Motion for Probable Cause Hearing. On September 18, 2017, the court entered an order scheduling a probable cause hearing for November 8, 2017. On November 8, 2017, the State filed a Request for Trial Date and Notice of Grounds for Objection to Defendant's Motion for Probable Cause Hearing. The State argued in part that the court had already found probable cause, that the only relief available from a probable cause

hearing was the immediate release of a defendant, and that the probable cause hearing was moot because Gaddy was not in custody. The State asserted that it could "only surmise that [Gaddy] is seeking dismissal of this matter entirely through the assertion of a lack of probable cause." *Id.* at 30. An entry in the chronological case summary dated November 8, 2017, states: "Hearing on Motion to Supress [sic] reset for 11/15/17 at 2:30 p.m." *Id.* at 5.

[4] On November 15, 2017, the court held a hearing, stated that its understanding was that the hearing was set on Gaddy's motion to suppress, asked if that was correct, and Gaddy's counsel answered affirmatively.

[5] According to the testimony of Indiana State Trooper Morgan Evans, he was working in downtown Jeffersonville on September 3, 2017. Around 2:30 or 3:00 a.m., Trooper Evans took a lunch break in the Jeff Boat parking area and was located two blocks from Slammers bar. When asked if there was anything particularly special about the neighborhood, Trooper Evans testified: "There is lots of narcotics sales people carrying narcotics through that neighborhood there is lots of drunk drivers, stolen vehicles uh over doses there is a decent amount of crime." Transcript Volume 2 at 18. Trooper Morgan observed two vehicles travelling very slowly southbound on Penn Street and the vehicle in the rear was following the vehicle in the front very closely. Trooper Morgan followed the two vehicles onto Market Street and observed the rear vehicle slow down while the front vehicle tried to "speed off." *Id.* at 21. Trooper Morgan testified that his training indicated that the rear vehicle was attempting to distract him and draw his attention away from the front vehicle. Trooper Morgan passed

the rear vehicle, followed the lead vehicle, observed the vehicle fail to use a turn signal, and initiated a traffic stop on the vehicle driven by Gaddy. When asked how many minutes he followed the vehicle, Trooper Morgan answered: "No more than five minutes I'm not exactly sure." *Id.* at 23.

[6] Trooper Morgan testified that he identified himself, asked to see Gaddy's driver's license and registration, and told her that he stopped her because she did not use her turn signal. He testified that Gaddy stated: "no body uses their turn signal in this area." *Id.* at 28. According to his testimony, another vehicle parked behind his vehicle, he told the driver to leave the scene, and the driver left the scene. When asked about his probable cause for stopping Gaddy's vehicle, Trooper Morgan answered: "She failed to use her turn signal two hundred fee[t] prior to turning when she was driving less than fifty miles per hour she didn't use her turn signal and didn't turn it on so I initiated a traffic stop on her." *Id.* at 31. Trooper Morgan also testified that the failure to use a turn signal is a violation of the Indiana Traffic Code. On cross-examination, Trooper Morgan testified that Gaddy slowed to make her turn, there were no oncoming cars, she stopped at all the stop signs, did not speed, made seven turns, and signaled at every turn except for the last turn. Trooper Morgan later stated that she failed to signal the last two turns.

[7] After Gaddy's counsel cross-examined Trooper Morgan, the following exchange occurred:

> JUDGE: I got just a couple of things. I guess as I listen to this I heard testimony that you were following her and I didn't really

understand why exactly you were following her but I think your testimony is you didn't see any signs of impairment but you continued to follow her is that right?

TROOPER: Yes.

JUDGE: Any particular reason?

TROOPER: I was just following her.

JUDGE: How far were you going to follow her?

TROOPER: I'm not for sure I follow a lot of vehicles.

JUDGE: Two or three for [sic] miles?

TROOPER: Probably or so, probably so.

JUDGE: Why?

TROOPER: Trying to figure out if an indicator if she is uh gonna make an infraction or a reason to stop because she was it was a suspicious vehicle coming from a high crime area so I was trying to figure out for probable cause to stop.

JUDGE: See and that's my problem with all of this what you are telling me is anybody that drives through that part of jeff is suspicious and you are gonna follow them until they commit a traffic infraction and then you're going to pull them over. Is that right?

TROOPER: No sir.

JUDGE: Well that's what it sounds like to me and I'm just trying I'm not trying to give you a hard time I'm trying to look for reasonable suspension [sic] and probable cause and like everybody I kinda put myself in and you may stand down be seated by the prosecutor if you would like. Here is my problem with this I drive through there all the time[.]

TROOPER: Yes sir.

JUDGE: It just seems strange to me that just driving through there is reasonable suspicion to follow someone and then continue to follow them until they commit a traffic offense because sooner or later they are gonna commit a traffic infraction there is no doubt about it you drive, you drive five miles, ten miles, fifteen mile, fifteen feet sooner or later you're gonna commit a traffic infraction. So you think that constitutes some reasonable suspicion?

TROOPER: Yes because I had reasonable suspicion this vehicle was coming from a high crime area there are houses we are watching where narcotics ect. [sic] so I had reasonable suspicion so I ended up getting probable cause to stop the vehicle.

JUDGE: So anybody who drives through downtown jeff is suspect?

TROOPER: Not downtown jeff but that area.

JUDGE: Market Street?

TROOPER: Penn Street, Cherry virgin alley, Graham those areas.

JUDGE: Ok you got anything else?

STATE: I have nothing else judge.

JUDGE: I think its pretextual stop what I got was testimony that you started to follow her and follow her for a long way and she committed no infraction and eventually she did. Granted if she didn't signal that's reason but I mean like I said anybody is eventually going to commit a traffic infraction if you follow them long enough. There has to be some reasonable suspicion why you continued to follow them otherwise you simply get to follow anybody around for no particular reason till you get the opportunity to pull them over. I don't think that's I don't think that is I think that is a pretextual stop I think that's coming up with a reason to stop somebody when there is, I think you were

gonna stop her you made the decision to stop her when you passed the other car. I think sooner or later you were gonna have a technical reason you could which was failing to signal after she signal half a dozen times I think it's a protected stop. Certainly if you seen her fail to signal within a reasonable space where she was doing other things or she hadn't signaled when she pulled out onto Market street, I'm all on board with that I really am but I don't see any reason why you continued to follow her just because she drove through that part of downtown jeff. I didn't hear any testimony that you were investigating any particular crime that she was driving a type of description of a car that was involved in a crime and so on and so forth. I just ya know I didn't hear any of that I mean this notion that just driving through there makes you suspect is I don't know if it meets the standard I think it's a pretextual stop. Ok[.]

STATE: Ok so just so I'm clear on the rule you suppressed here inaudible.

JUDGE: I'm gonna suppress it I think it's a protected stop I don't think there was reasonable suspicion to continue to follow her uh and I think it was clear he was going to stop her and made a decision to stop her long before she failed to signal and I think its stop to see if she had been drinking basically because she had been coming down the street from a bar and I don't think you can do that so I'm going to suppress the evidence thank you.

*Id.* at 65-68.

### *Discussion*

[8]     We first note that Gaddy did not file an appellee's brief. In such a case, we

apply a less stringent standard of review with respect to showings of reversible

error. *State v. Weyer*, 831 N.E.2d 175, 177 (Ind. Ct. App. 2005). We do not

have the burden of controverting arguments advanced for reversal. *Id.* The

State only needs to establish prima facie error, which is error at first sight, on first appearance, or on the face of it. *Id.*

[9] The issue is whether the trial court erred in granting Gaddy's motion to suppress. "In reviewing a trial court's motion to suppress, we determine whether the record discloses 'substantial evidence of probative value that supports the trial court's decision.'" *State v. Renzulli*, 958 N.E.2d 1143, 1146 (Ind. 2011) (quoting *State v. Quirk*, 842 N.E.2d 334, 340 (Ind. 2006)). "We do not reweigh the evidence, but consider 'conflicting evidence most favorably to the trial court's ruling.'" *Id.* (quoting *Quirk*, 842 N.E.2d at 340). "When the State appeals from a negative judgment, as here, it 'must show that the trial court's ruling on the suppression motion was contrary to law.'" *Id.* (quoting *State v. Washington*, 898 N.E.2d 1200, 1203 (Ind. 2008), *reh'g denied*). "[T]he ultimate determination of the constitutionality of a search or seizure is a question of law that we consider de novo." *Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014).

[10] The State asserts that the trial court did not identify any statutory or constitutional basis for determining that the trooper was not permitted to follow a vehicle for several minutes. The State argues that there is no requirement that an officer have reasonable suspicion that criminal activity is afoot before following a vehicle. It contends that following a vehicle is not synonymous with stopping a vehicle and that, while an officer needs reasonable suspicion or probable cause for that latter, such is not required for the former. It points out that the United States Supreme Court has held: "A person travelling in an

automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another." Appellant's Brief at 9 (quoting *United States v. Knotts*, 460 U.S. 276, 281 (1983)). With respect to the trial court's concern that the trooper had undertaken a pretextual stop, the State argues that the United States Supreme Court has made clear that a traffic stop based on a traffic violation is not unlawful merely because an officer has an ulterior motive for stopping the vehicle. *Id.* at 10 (citing *Whren v. United States*, 517 U.S. 806, 810-813 (1996)).

[11] The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

[12] There are three levels of police investigation, two of which implicate the Fourth Amendment and one of which does not. *Powell v. State*, 912 N.E.2d 853, 859 (Ind. Ct. App. 2009). First, the Fourth Amendment requires that an arrest or detention that lasts for more than a short period of time must be justified by probable cause. *Id.* Second, pursuant to Fourth Amendment jurisprudence, the police may, without a warrant or probable cause, briefly detain an individual for investigatory purposes if, based upon specific and articulable facts, the officer has a reasonable suspicion that criminal activity has or is about to occur. *Id.* The third level of investigation occurs when a police officer makes a casual

and brief inquiry of a citizen, which involves neither an arrest nor a stop. *Id.* This is a consensual encounter in which the Fourth Amendment is not implicated. *Id.*

[13] "'Not every encounter between a police officer and a citizen amounts to a seizure requiring objective justification.'" *Id.* (quoting *Overstreet v. State*, 724 N.E.2d 661, 663 (Ind. Ct. App. 2000), *reh'g denied*, *trans. denied*). "A person is 'seized' only when, by means of physical force or a show of authority, his or her freedom of movement is restrained." *Id.* (quoting *State v. Lefevers*, 844 N.E.2d 508, 513 (Ind. Ct. App. 2006), *trans. denied*). It is not the purpose of the Fourth Amendment to eliminate all contact between police and the citizenry. *Id.* at 860.

[14] Trooper Evans did not stop, detain, or otherwise restrain Gaddy when he followed her. Gaddy did not file an appellee's brief and accordingly cited no authority for the proposition that Trooper Evans violated her Fourth Amendment rights by following her. We conclude that the State has demonstrated a prima facie case of error. *See Overstreet*, 724 N.E.2d at 664 (holding that the Fourth Amendment was not implicated when the officer followed the defendant to a gas station, approached him, asked about his action, and asked for his identification).

[15] With respect to the stop, we observe that the Indiana Supreme Court has held: "It is unequivocal under our jurisprudence that even a minor traffic violation is sufficient to give an officer probable cause to stop the driver of a vehicle."

*Austin v. State*, 997 N.E.2d 1027, 1034 (Ind. 2013). *See also Quirk*, 842 N.E.2d at 340 (holding that police officers "may stop a vehicle when they observe minor traffic violations" and "[a] traffic violation, however minor, creates probable cause to stop the driver of the vehicle"). In addressing whether Article 1, Section 11 of the Indiana Constitution prohibits pretextual stops, the Indiana Supreme Court has held:

> We find nothing unreasonable in permitting an officer, who may have knowledge or suspicion of unrelated criminal activity by the motorist, to nevertheless respond to an observed traffic violation. It is likewise not unreasonable for a motorist who commits a traffic law violation to be subject to accountability for said violation even if the officer may have an ulterior motive of furthering an unrelated criminal investigation.

*Mitchell v. State*, 745 N.E.2d 775, 787 (Ind. 2001). The record reveals that Trooper Morgan testified that Gaddy failed to use her turn signal prior to turning. Moreover, the trial court found that Gaddy committed a traffic infraction. Specifically, the court stated that Gaddy initially "committed no infraction and eventually she did." Transcript Volume 2 at 67. The State has demonstrated that the grant of Gaddy's motion constituted a prima facie error.

### *Conclusion*

For the foregoing reasons, we reverse the trial court's grant of Gaddy's motion and remand for proceedings consistent with this opinion.

Reversed and remanded.

Bailey, J., and Crone, J., concur.