Jonta A. POWELL, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 02A03–0906–CR–241.

Court of Appeals of Indiana.

Sept. 8, 2009.

Donald C. Swanson, Fort Wayne, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Marjorie Lawyer–Smith, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

BROWN, Judge.

Jonta A. Powell appeals his convictions for possession of marijuana[1] and possession of a controlled substance,[2] each as class D felonies. Powell raises two issues, which we revise and restate as follows:

I. Whether the trial court abused its discretion by admitting into evidence the marijuana and methamphetamine discovered in the vehicle occupied by Powell; and

II. Whether the evidence was sufficient to support Powell's convictions.

We affirm.

The relevant facts follow. At approximately 2:30 in the afternoon of June 15, 2008, Fort Wayne Police Department Officer Marc Deshaies, a detective with the vice and narcotics division, was patrolling the area of Plaza Avenue in Fort Wayne, Indiana, looking for a subject. While in the area, Officer Deshaies noticed a gray vehicle parked on the side of the street. When Officer Deshaies initially passed by the vehicle, the occupants of the vehicle "turned their faces away" and "got further down in the seat." Transcript at 27. Sev-

---

1. Ind.Code § 35–48–4–11 (2004).

2. Ind.Code § 35–48–4–7 (2004).

eral minutes later, Officer Deshaies returned to the area and noticed that the occupants were still in the gray vehicle parked on the side of the road. The gray vehicle was properly parked, and the vehicle was "not running." *Id.* at 21.

Officer Deshaies had "specifically been made aware" that there "had been kind of a rash of burglaries" in the area. *Id.* at 26. Burglaries were "one of the highest crime rates in the summer" in the area and officers "particularly patrol[ed] those areas looking for persons that might be loitering in the area, looking for persons that might be in between buildings, that might be in activity that would be related to burglaries ..." *Id.* at 27.

Officer Deshaies's attention was drawn to the gray vehicle because of the high rate of burglaries. He "pulled up behind" the gray vehicle. Officer Deshaies was in full police uniform and was driving a fully marked squad car. He did not activate his squad vehicle's overhead emergency lights. He then exited his squad car and approached the driver's side of the gray vehicle in order "to conduct an investigation to see what their purpose was in the area." *Id.* at 7. Fort Wayne Police Officer George Nicklow arrived at the scene "[s]everal seconds" after Officer Deshaies. Transcript at 43.

Officer Deshaies was able to observe several items in the gray vehicle "even on initial approach" to the gray vehicle because "it was clear daylight" and because the vehicle's "windows [were] rolled down." *Id.* at 9. Officer Deshaies observed "a spent .22 shell casing in the back seat, which heightened [his] concern a great deal that there might be a weapon in the car." *Id.* Officer Deshaies also observed there was "probably a six pack of beer that was half drank in the car" and "[t]here was also an open bottle of vodka in the car." *Id.*

Officer Deshaies asked Powell, who was sitting in the driver's seat of the gray vehicle, if Powell was waiting for someone in the area. Powell responded that he was "waiting for his friend who had walked off" and "started mumbling." *Id.* Powell "couldn't clarify where his friend was, who it was or where he went." *Id.* Powell kept favoring his right side by his thigh area. Officer Deshaies asked Powell not to put his hand there, but Powell kept bringing his hand back to his thigh area. Officer Deshaies did not know whether Powell was "putting something in that area or retrieving something from that area." *Id.* at 11. Due to his "concerns for weapons possibly being in the vehicle and his muttered statements," Officer Deshaies asked Powell "to step out of the car so [he] could speak to him." *Id.* at 10. At that point, Powell "put both hands down by the seatbelt area and turned his back to [Officer Deshaies] to exit the car...." *Id.* Officer Deshaies testified that Powell's actions "really brought up [his] concern for safety" and Officer Deshaies "immediately removed him from the car at that point." *Id.* Officer Deshaies performed a limited pat-down search of Powell for weapons "due to the presence of the shell casings in the car and his distinct movements around his waist area and towards the middle of the seat." *Id.* at 12.

Officer Nicklow approached the passenger side of the gray vehicle. As he approached the "rear on the passenger side" of the vehicle, Officer Nicklow observed that the person seated in the passenger seat "slowly move[d] his right arm and hand down towards the space between the door and the passenger seat," which "heightened [Officer Nicklow's] concern for weapons as [he] approached." *Id.* at 43. Officer Nicklow also observed an open bottle of beer. Officer Nicklow asked the passenger to get out of the vehicle out of a

concern for his safety. The person seated in the passenger seat of the vehicle opened the door to exit the vehicle. Officer Nicklow was about two feet away when the passenger opened the door. As the passenger was getting out, Officer Nicklow observed "in plain view three small baggies laying on the floor board on the right side of the passenger seat." *Id.* at 45. The baggies were "directly under the passenger side lever to tilt the passenger seat, exactly where [Officer Nicklow] saw [the passenger] reach." *Id.* Officer Nicklow noticed that several of the bags "contained a green leafy like substance that [he] knew from [his] training and experience to be marijuana." *Id.* at 46. Officer Nicklow also noticed baggies containing pills which had a "stamp of Batman, a Batman symbol on it." *Id.*

Officer Nicklow then advised Officer Deshaies that there was marijuana in the car, and "at that time, [Officer Deshaies] took Mr. Powell into custody and placed him in handcuffs . . . ," and Officer Nicklow took the passenger "into custody." *Id.* at 13–14. After placing Powell in handcuffs, Officer Deshaies "checked the area that [Powell] had been putting his hands in." *Id.* at 14. Officer Deshaies found a small baggie of marijuana "[r]ight under the front edge of the driver's seat." Id Officer Deshaies also found a "single loose pill" which was "resting pretty much where the center console, the seat belt and the rails for the seat all joined." *Id.* at 15. Officer Deshaies noticed that the pill was brightly colored and had an imprint on it, which were "common in ecstasy pills." *Id.* at 38.[3] Officer Deshaies "believed [the pill] to be ecstasy . . . , methamphetamine or dimethamphetamine," and a field kit test revealed that the pill "tested positive for that." *Id.*

On June 19, 2008, the State filed information charging Powell with possession of a controlled substance[4] as a class D felony and possession of marijuana hash oil or hashish as a class D felony. On October 2, 2008, the State filed amended information for possession of controlled substance.[5] On December 2, 2008, Powell waived his right to a jury trial, and on December 16, 2008, the trial court conducted a bench trial.

During his bench trial, the State moved to introduce the marijuana and methamphetamine found by Officer Deshaies, and Powell objected on the grounds that Officer Deshaies had initiated an impermissible investigatory stop under the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution. The trial court stated:

> Well, I don't see this as being [an investigatory] stop because it wasn't a stop. . . . These guys were sitting in a car and the officer came up to them, and I do believe he has the right to do that for anyone without any particularized reason or any suspicion that crime's afoot.

*Id.* at 32–33. The trial court overruled the objection and admitted the marijuana and

---

**3.** Officer Deshaies testified that, although he may not have been able to identify the imprint, he thought the imprint on the pill "was the imprint for Batman." Transcript at 38. Officer Deshaies testified that "[u]sually, the imprints are of cartoon characters, of symbols that were—are in common lore, but they're never usually numbers or anything that would be related to pharmaceutical." *Id.* at 39.

**4.** Specifically, the June 19, 2008 Information alleged that Powell was in possession of the controlled substance as "3,4–methylenedioxymethamphetamine," classified in Schedule I of Ind.Code § 35–48–2.

**5.** The amended information charged Powell with possession of the controlled substance methamphetamine as classified in Schedule II of Ind.Code § 35–48–2.

methamphetamine into evidence. The trial court found Powell guilty as charged. The trial court sentenced Powell to concurrent terms of one and one-half years for each class D felony conviction to be served in the Indiana Department of Correction.

## I.

■ The first issue is whether the trial court abused its discretion by admitting into evidence the marijuana and methamphetamine discovered in Powell's vehicle. The admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for abuse of discretion. *Wilson v. State*, 765 N.E.2d 1265, 1272 (Ind.2002). An abuse of discretion occurs "where the decision is clearly against the logic and effect of the facts and circumstances." *Smith v. State*, 754 N.E.2d 502, 504 (Ind.2001).

Powell argues that the admission of the marijuana and methamphetamine into evidence violated his constitutional rights against unreasonable search and seizure under the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution. Specifically, Powell argues that Officer Deshaies's initial approach towards the vehicle in which Powell was seated did not constitute a consensual encounter, but rather constituted an investigatory stop. However, the State argues that Officer Deshaies's initial approach to Powell and his vehicle constituted a consensual encounter which did not implicate the Fourth Amendment to the United States Constitution or Article 1, Section 11 of the Indiana Constitution. We address Powell's arguments under the federal and state constitutions separately.

### A. *The Fourth Amendment*

■ Powell first argues that Officer Deshaies's initial approach towards the vehicle in which he was an occupant constituted an investigatory stop and an illegal seizure under the Fourth Amendment, rendering the subsequent search of his vehicle also illegal. The Fourth Amendment to the United States Constitution guarantees the right to be secure against unreasonable search and seizure. *State v. Calmes*, 894 N.E.2d 199, 202 (Ind.Ct.App. 2008) (citing *State v. Augustine*, 851 N.E.2d 1022, 1025–1026 (Ind.Ct.App. 2006)). In order to determine whether the officer impinged upon Powell's Fourth Amendment rights, we must analyze what level of police investigation occurred.

■ There are three levels of police investigation, two of which implicate the Fourth Amendment and one of which does not. *Id.* (citing *Overstreet v. State*, 724 N.E.2d 661, 663 (Ind.Ct.App.2000), *reh'g denied, trans. denied*). First, the Fourth Amendment requires that an arrest or detention that lasts for more than a short period of time must be justified by probable cause. *Id.* Second, pursuant to Fourth Amendment jurisprudence, the police may, without a warrant or probable cause, briefly detain an individual for investigatory purposes if, based upon specific and articulable facts, the officer has a reasonable suspicion that criminal activity has or is about to occur. *Id.* The third level of investigation occurs when a police officer makes a casual and brief inquiry of a citizen, which involves neither an arrest nor a stop. *Id.* This is a consensual encounter in which the Fourth Amendment is not implicated. *Id.*

■ "Not every encounter between a police officer and a citizen amounts to a seizure requiring objective justification." *Overstreet*, 724 N.E.2d at 663. A person is "seized" only when, by means of physical force or a show of authority, his or her freedom of movement is restrained. *State*

v. *Lefevers,* 844 N.E.2d 508, 513 (Ind.Ct. App.2006) (citing *United States v. Mendenhall,* 446 U.S. 544, 553, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), *reh'g denied* ), *trans. denied.* It is not the purpose of the Fourth Amendment to eliminate all contact between police and the citizenry. *Mendenhall,* 446 U.S. at 553, 100 S.Ct. 1870. What constitutes a restraint on liberty prompting a person to conclude that he is not free to "leave" will vary depending upon the particular police conduct at issue and the setting in which the conduct occurs. *Michigan v. Chesternut,* 486 U.S. 567, 573, 108 S.Ct. 1975, 1979, 100 L.Ed.2d 565 (1988). "Examples of circumstances that might indicate a seizure where the person did not actually attempt to leave the scene would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Mendenhall,* 446 U.S. at 553, 100 S.Ct. 1870. If such evidence is lacking, otherwise inoffensive contact between a member of the public and the police does not amount to a seizure of that person. *Id.* Further, "*Mendenhall* establishes that the test for existence of a 'show of authority' is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." *California v. Hodari D.,* 499 U.S. 621, 628, 111 S.Ct. 1547, 1551, 113 L.Ed.2d 690 (1991).

In *Overstreet,* we held there was no "stop" or "seizure" of a defendant where the defendant pulled into a gas station and was fueling his vehicle, and an officer pulled his vehicle behind the defendant without activating the lights, approached him, asked for identification, and questioned him about some suspicious activity the officer had observed. *Overstreet,* 724 N.E.2d at 664. Similarly, in *Lefevers,* we held the defendant was not "seized" when, of her own volition, she pulled into a convenience store parking lot and a police officer parked nearby without activating his emergency lights, got out of his vehicle, and began talking to the defendant in a non-threatening way. *Lefevers,* 844 N.E.2d at 513. Thus, in both *Overstreet* and *Lefevers,* the police officer did not have to possess reasonable suspicion of wrongdoing when they first started talking to the defendants. *See also Manigault v. State,* 881 N.E.2d 679, 685 (Ind.Ct.App. 2008) (concluding that a trooper's approach and initial contact with the defendant did not amount to a seizure of the defendant where the trooper observed the defendant loitering near a vehicle belonging to an individual with an outstanding arrest warrant, followed the defendant into a hotel lobby, and asked the defendant for his identification); *Augustine,* 851 N.E.2d at 1025–1026 (noting that a police officer's initial encounter with defendant appeared to be consensual where the officer approached the defendant who was sitting in the driver's seat of his vehicle on his driveway with the engine running and there was no evidence that the officer displayed a weapon, touched the defendant, or used any language or spoke in a tone of voice mandating compliance).

In *Michigan v. Chesternut,* the United States Supreme Court concluded that the defendant in that case was not seized by police and noted that the record did not reflect that the police had activated a siren or flashers, commanded the defendant to halt, or displayed any weapons. 486 U.S. at 574–575, 108 S.Ct. at 1980–1981. The Court noted that "[w]hile the very presence of a police car driving parallel to a running pedestrian could be somewhat intimidating, this kind of police presence

does not, standing alone, constitute a seizure." *Id.* at 574, 108 S.Ct. at 1980. The Court concluded that "[w]ithout more, the police conduct here—a brief acceleration to catch up with [the defendant], followed by a short drive alongside him—was not 'so intimidating' that [the defendant] could reasonably have believed that he was not free to disregard the police presence and go about his business." *Id.* at 576, 108 S.Ct. at 1981. *See also Florida v. Royer,* 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983) (observing that the mere approach by law enforcement officers does not constitute seizure).

Federal courts have held that law enforcement's approach to a vehicle parked in a public place does not in itself constitute an investigatory stop or a seizure for purposes of the Fourth Amendment. *See United States v. Foster,* 376 F.3d 577, 581–584 (6th Cir.2004) (finding no seizure where three uniformed officers approached the defendant as he was emerging from a parked vehicle, asked the defendant his name and what he was doing, and asked whether the defendant had identification), *cert. denied,* 543 U.S. 1012, 125 S.Ct. 635, 160 L.Ed.2d 478 (2004); *United States v. Baker,* 290 F.3d 1276, 1278 (11th Cir.2002) (holding that no seizure occurred where police approached a vehicle stopped in traffic and the record did not reveal that officers behaved in a manner that was threatening, and noting that "[t]he societal pressure to stop and speak with law enforcement is not a sufficient restraint of liberty to raise the interaction to a level that requires constitutional protection"); *United States v. Dockter,* 58 F.3d 1284, 1287 (8th Cir.1995) (concluding that the defendants were not seized within the meaning of the Fourth Amendment where a police officer pulled his vehicle behind the defendants' parked car and activated his amber warning lights), *reh'g and suggestion for reh'g en banc denied, cert. de-*

*nied,* 516 U.S. 1122, 116 S.Ct. 932, 133 L.Ed.2d 859 (1996); *United States v. Kim,* 25 F.3d 1426, 1430 (9th Cir.1994) (acknowledging that police interrogation of automobile occupants typically involves a greater degree of intrusiveness than questioning of pedestrians, but finding that where officers approach an already parked car, the disparity between automobile and pedestrian stops dissipates, and holding that a federal agent did not seize the defendant by approaching defendant's parked vehicle), *cert. denied,* 513 U.S. 1030, 115 S.Ct. 607, 130 L.Ed.2d 517 (1994); *United States v. Encarnacion–Galvez,* 964 F.2d 402, 410 (5th Cir.1992) (finding that no seizure occurred where federal agents did not stop the defendant's vehicle, but approached it only after the defendant had parked it), *cert. denied,* 506 U.S. 945, 113 S.Ct. 391, 121 L.Ed.2d 299 (1992); *United States v. Castellanos,* 731 F.2d 979, 983–984 (D.C.Cir.1984) (finding that a federal park officer did not seize the defendant by approaching the defendant's parked vehicle, asking several questions, and requesting identification); *United States v. Pajari,* 715 F.2d 1378, 1381–1383 (8th Cir.1983) (noting that federal agents' initial approach to the defendant's car did not amount to an unlawful seizure).

Other states have also concluded that law enforcement's approach to a parked vehicle in itself does not implicate the Fourth Amendment. *See State v. Gahner,* 554 N.W.2d 818, 820 (N.D.1996) (noting that "[t]he law distinguishes between approaching an already stopped vehicle and stopping a moving one" and holding that a police officer's initial approach to the defendant's vehicle was a consensual encounter rather than a seizure where the vehicle was parked upon private property to which the public had access); *In re the Welfare of E.D.J.,* 502 N.W.2d 779, 782 (Minn.1993) (stating that generally, under the *Menden-*

*hall/Royer* standard, the "mere act of approaching a person who is . . . sitting in a car that is parked and asking questions is not a 'seizure' "); *State v. Pulley,* 863 S.W.2d 29, 30 (Tenn.1993) (noting that a police officer may "approach a car parked in a public place and ask for driver identification and proof of vehicle registration, without any reasonable suspicion of illegal activity"); *Ex parte Betterton,* 527 So.2d 747, 749–750 (Ala.1988) (holding that police officers' mere approach of a car already stopped and parked in a public park did not constitute an implied restraint as to amount to a seizure of the defendant); *Lightbourne v. State,* 438 So.2d 380, 387–388 (Fla.1983) (holding that police officer's investigation of a suspicious vehicle did not rise to the level of an unconstitutional stop where the officer simply approached a parked car and asked the defendant a few simple questions as to the reason for his presence there), *cert. denied,* 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984).

■■ Here, the record reveals that the vehicle in which Powell was seated was parked on the side of a street. The vehicle was "not running." Transcript at 21. Officer Deshaies parked his squad vehicle behind the vehicle in which Powell and another individual were seated. The record reveals that Officer Deshaies was in police uniform and driving a fully marked squad vehicle, but that he did not activate the emergency lights of his squad vehicle. There is no evidence that Officer Deshaies activated his squad vehicle's siren or approached the vehicle occupied by Powell in a manner that would be considered aggressive or intimidating. Upon exiting his squad vehicle, Officer Deshaies approached the driver's side of the vehicle on foot. The record does not reflect that Officer Deshaies displayed a weapon as he approached Powell's vehicle or that Officer

Deshaies used any language or spoke in a tone of voice which mandated compliance.

Given these facts, and in light of the preceding cases, we cannot say that Officer Deshaies's approach to the parked vehicle in which Powell was an occupant and initial contact with Powell constituted an investigatory stop or a seizure under the Fourth Amendment. The record supports the trial court's ruling that the initial encounter here was consensual and thus fell outside the ambit of the Fourth Amendment's guarantee against unreasonable searches and seizures. Therefore, under the circumstances, Officer Deshaies did not have to possess reasonable suspicion of wrongdoing in order to park behind or approach Powell's vehicle in order to ask Powell his purpose for being in the area. *See Foster,* 376 F.3d at 581–584 (concluding there was no seizure where three uniformed officers approached the defendant emerging from a parked vehicle and asked the defendant his name, what the defendant was doing, and whether the defendant had identification); *Lightbourne,* 438 So.2d at 387–388 (holding that an officer was permitted to approach a parked vehicle and ask the defendant a few simple questions as to the reason for his presence there); *see also Manigault,* 881 N.E.2d at 685 (finding that police did not need to possess reasonable suspicion to initially approach the defendant); *Lefevers,* 844 N.E.2d at 513 (finding that the defendant was not seized under the Fourth Amendment); *Augustine,* 851 N.E.2d at 1025–1026 (noting that police interaction was a consensual encounter and that police were not required to possess reasonable suspicion to approach the defendant); *Overstreet,* 724 N.E.2d at 664 (holding that an interaction between an officer and the defendant was a consensual encounter and thus the officer was not required to possess reasonable suspicion of wrongdoing to approach the defendant).

Powell also appears to argue that Officer Deshaies's subsequent request for Powell to exit the vehicle violated the Fourth Amendment. "Under the Fourth Amendment, a law enforcement officer is permitted to conduct a reasonable search for weapons, for the officer's protection, where the officer has 'reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime.'" *Lewis v. State,* 755 N.E.2d 1116, 1123 (Ind.Ct.App.2001) (citing *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Here, Officer Deshaies observed the "spent .22 shell casing" and observed that Powell "kept favoring his right side by his thigh area" and "kept his hand there," which was "a common area where people will carry guns." Transcript at 9–10. Based upon these facts, we conclude that Officer Deshaies had reason to believe that he was dealing with an armed and dangerous individual. When the small baggies containing marijuana in the vehicle became visible to the officers, seizure of the marijuana was proper pursuant to the "plain view doctrine." *See Hannibal v. State,* 804 N.E.2d 206, 210–211 (Ind.Ct.App.2004) (concluding that the seizure of marijuana was proper under the plain view doctrine). The seizure of additional contraband from the vehicle was justified as the result of a search incident to arrest. *Black v. State,* 810 N.E.2d 713, 715 (Ind.2004) (observing that police may search the passenger compartment of a vehicle after the occupant is taken into custody). Therefore, the trial court did not abuse its discretion in overruling Powell's objection to the admission into evidence of the marijuana or methamphetamine based upon the Fourth Amendment.

B. *Article 1, Section 11 of the Indiana Constitution*

Powell also maintains that Officer Deshaies's initial approach towards the vehicle in which he was an occupant violated Article 1, Section 11 of the Indiana Constitution, which provides for the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure...." Despite the fact that the text of Article I, Section 11 is nearly identical to the Fourth Amendment, Indiana courts interpret and apply it "independently from federal Fourth Amendment jurisprudence." *Mitchell v. State,* 745 N.E.2d 775, 786 (Ind.2001). In conducting analysis under this provision, we focus on whether the officer's conduct "was reasonable in light of the totality of the circumstances." *Holder v. State,* 847 N.E.2d 930, 940 (Ind. 2006). In making this determination, we balance: (1) the degree of concern, suspicion, or knowledge that a violation has occurred; (2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities; and (3) the extent of law enforcement needs. *Id.*

Here, the record reveals that Officer Deshaies parked his squad vehicle behind the vehicle in which Powell and another occupant were seated and simply approached the driver's side of the vehicle on foot. Officer Deshaies did not activate his squad vehicle's siren or emergency lights or display a weapon as he approached Powell's vehicle. Under these circumstances, we conclude that Officer Deshaies's approach and initial contact with Powell constituted a consensual encounter which did not violate Powell's rights against unreasonable search or seizure under Article 1, Section 11 of the Indiana Constitution. *See Taylor v. State,* 891 N.E.2d 155, 160 (Ind.Ct.App.2008) (holding that a police encounter where officers asked the defendant a few simple questions about his identification was consensual and minimally intrusive and there-

fore did not violate Article 1, Section 11). *trans. denied, cert. denied,* —— U.S. ——, 129 S.Ct. 1008, 173 L.Ed.2d 301 (2009). The trial court did not abuse its discretion in overruling Powell's objection to the admission of evidence based upon Article 1, Section 11 of the Indiana Constitution.

In conclusion, we cannot say that the trial court abused its discretion in overruling Powell's objections based upon the Fourth Amendment to the United States Constitution or Article 1, Section 11 of the Indiana Constitution to the admission into evidence of the marijuana and methamphetamine discovered in Powell's vehicle.[6]

## II.

The next issue is whether the evidence was sufficient to sustain Powell's convictions. The State charged Powell with possession of a controlled substance, specifically methamphetamine, as a class D felony. Ind.Code § 35–48–4–7 provides in part: "A person who, without a valid prescription ..., knowingly or intentionally possesses a controlled substance (pure or adulterated) classified in schedule I, II, III, or IV, except marijuana or hashish, commits possession of a controlled substance, a Class D felony." To convict Powell of that offense, the State was required to prove, beyond a reasonable doubt, that Powell knowingly or intentionally possessed methamphetamine. The State also charged Powell with the possession of marijuana as a class D felony. Ind.Code § 35–48–4–11 provides in part: "A person who ... knowingly or inten-

tionally possesses (pure or adulterated) marijuana, hash oil, or hashish ... commits possession of marijuana, hash oil, or hashish, a Class A misdemeanor. However, the offense is a Class D felony ... if the person has a prior conviction of an offense involving marijuana, hash oil, or hashish." To convict Powell on that offense, the State was required to show that Powell knowingly or intentionally possessed marijuana and that Powell had a prior conviction of an offense involving marijuana.[7]

 Powell argues that the State presented insufficient evidence to show that he constructively possessed the marijuana and methamphetamine discovered in the vehicle in which he was an occupant. When reviewing the sufficiency of the evidence, we consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State,* 867 N.E.2d 144, 146 (Ind.2007). We do not assess witness credibility or reweigh the evidence. *Id.* We consider conflicting evidence most favorably to the trial court's ruling. *Id.* We affirm the conviction unless ' "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt.' " *Id.* (quoting *Jenkins v. State,* 726 N.E.2d 268, 270 (Ind.2000)). It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* at 147. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.*

---

6. Because we conclude that the initial encounter was consensual and involved neither an arrest nor a stop, and thus that Powell's rights against unreasonable search or seizure were not violated under the Fourth Amendment to the United States Constitution or Article 1, Section 11 of the Indiana Constitution, we do not address Powell's argument that Officer Deshaies did not have reasonable

suspicion of criminal activity. *See Overstreet,* 724 N.E.2d at 663; *Taylor,* 891 N.E.2d at 160.

7. The record reveals that Powell was convicted on December 29, 2004 for possession of marijuana. Powell does not argue that this prior conviction was insufficient to support his class D felony conviction here.

■ Constructive possession may support a conviction for a drug offense. *Goliday v. State*, 708 N.E.2d 4, 6 (Ind. 1999). To show constructive possession, the State must show that the defendant had both (1) the intent to maintain dominion and control, and (2) the capability to maintain dominion and control over the contraband. *Id.* Control in this sense concerns the defendant's relation to the place where the substance is found: whether the defendant has the power, by way of legal authority or in a practical sense, to control the place where, or the item in which, the substance is found. *Jones v. State*, 807 N.E.2d 58, 65 (Ind.Ct.App.2003), *trans. denied*, Where a person's control is nonexclusive, intent to maintain dominion and control may be inferred from additional circumstances that indicate that the person knew of the presence of the contraband. *Allen v. State*, 798 N.E.2d 490, 501 (Ind.Ct.App.2003). Those additional circumstances include: (1) incriminating statements by the defendant; (2) attempted flight or furtive gestures; (3) a drug manufacturing setting; (4) proximity of the defendant to the drugs; (5) drugs in plain view; and (6) location of the drugs in close proximity to items owned by the defendant. *Id; Jones*, 807 N.E.2d at 65.

■ The record reveals that Officer Deshaies observed that Powell "kept favoring his right side by his thigh area." Transcript at 10. Officer Deshaies testified: "I'd tell him not to put his hand there, he'd bring it back up and he'd just— I don't know if he subconsciously—he'd bring it back down." *Id.* at 10. Officer Deshaies did not know whether Powell was "putting something in that area or retrieving something from that area." *Id.* at 11. When Officer Deshaies requested Powell to exit the vehicle, Powell "put both hands down by the seatbelt area and turned his back to [Officer Deshaies] to exit the car...." *Id.*

After Officer Nicklow noticed several small baggies containing "a green leafy like substance" in plain view and Officer Deshaies and Officer Nicklow placed Powell and the other occupant of the vehicle in handcuffs, Officer Deshaies "checked the area that [Powell] had been putting his hands in." *Id.* at 14. Officer Deshaies discovered a small baggie of marijuana "[r]ight under the front edge of the driver's seat." *Id.* Officer Deshaies also found a "single loose pill" which was "resting pretty much where the center console, the seat belt and the rails for the seat all joined." *Id.* at 15. Officer Deshaies noticed that the pill was brightly colored and had an imprint on it, which were "common in ecstasy pills." *Id.* at 38. Officer Deshaies performed a field test kit on the pill which revealed the pill to be ecstasy, methamphetamine or dimethamphetamine. *Id.*

Based upon our review of the record, we conclude that evidence of probative value existed from which the trial court could have determined that Powell had constructive possession of the marijuana and methamphetamine discovered in the vehicle. *See, e.g., Von Hauger v. State*, 254 Ind. 297, 298, 258 N.E.2d 847, 848 (1970) (holding that evidence was sufficient to convict defendant for possession of marijuana where a police officer upon approaching the car had observed the defendant placing something on the floor under the seat and the officer found the marijuana in that location even though there were two persons in the vehicle and the State never established that the defendant was the owner of the automobile); *Holmes v. State*, 785 N.E.2d 658, 662 (Ind.Ct.App.2003) (holding that the State presented sufficient evidence to convict the defendant based in part upon defendant's close proximity to marijuana found under the driver's seat of

a vehicle). Accordingly, we conclude that the State presented evidence sufficient to support Powell's convictions for possession of marijuana and a controlled substance.

For the foregoing reasons, we affirm Powell's convictions for possession of marijuana as a class D felony and possession of a controlled substance as class D felony.

Affirmed.

CRONE, J., and MAY, J., concur.

**A.J.L., Appellant–Respondent,**