# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**JOEL M. SCHUMM**
Clinical Professor of Law

**JARRYD F. ANGLIN**
Certified Legal Intern
Indiana University Robert H. McKinney
School of Law
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

**FILED**

Feb 21 2012, 9:22 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

|  |  |  |
|---|---|---|
| HERBERT YANEZ, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  49A02-1104-CR-362 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Teresa Hall, Judge Pro Tempore
Cause No. 49F10-1004-CM-27238

**FEBRUARY 21, 2012**

**OPINION - FOR PUBLICATION**

**BARTEAU, Senior Judge**

Defendant-Appellant Herbert Yanez appeals his conviction of possession of marijuana, a Class A misdemeanor. Ind. Code § 35-48-4-11 (1983).

We reverse and remand.

## ISSUE

Yanez presents two issues for our review, one of which is dispositive: whether the trial court erred by admitting evidence of marijuana because it was discovered as the result of an unconstitutional stop.

## FACTS AND PROCEDURAL HISTORY

On April 2, 2010, Special Agent Rodriguez with the Immigration and Customs Enforcement Unit of the Department of Homeland Security, assisted by Officer Humerickhouse with the Indianapolis Metropolitan Police, was conducting two investigations at a flea market in Indianapolis: 1) Operation Community Shield (looking for illegal immigrants who are gang members) and 2) customs detail for counterfeit NCAA items. Yanez was present at the flea market that day with a female companion. At some point, Yanez was approached by Special Agent Rodriguez, who began questioning him. Officer Humerickhouse subsequently approached the two men to assist Special Agent Rodriguez. At that time, Yanez began reaching toward his groin area, and Officer Humerickhouse asked him to keep his hands out of his pockets. She also asked him if he had any weapons and if she could perform a pat-down search. Yanez consented to the search. As Officer Humerickhouse reached down to begin the pat-down search,

2

she noticed a baggie with marijuana sticking out of Yanez's pants pocket. Yanez was charged with possession of marijuana as a Class A misdemeanor. A bench trial was held during which Yanez moved to suppress the marijuana based upon the lack of constitutional basis for the investigatory stop. The trial court denied the motion and found Yanez guilty as charged. It is from this conviction that Yanez now appeals.

DISCUSSION AND DECISION

Yanez contends that his rights under both the Fourth Amendment to the United States Constitution and article I, section 11 of the Indiana Constitution were violated when Special Agent Rodriguez stopped him and questioned him at the flea market. Essentially, Yanez asserts that the trial court erred by admitting evidence of the marijuana at trial because it was obtained as a result of the unconstitutional investigatory stop and therefore should have been excluded. Because it is dispositive in this case, we need only address the issue on state constitutional grounds.

"Although we generally review a trial court's decision to admit evidence despite a motion to suppress under an abuse of discretion standard, the ultimate determination of whether an officer had reasonable suspicion to conduct an investigatory stop is reviewed de novo." *Harper v. State*, 922 N.E.2d 75, 79 (Ind. Ct. App. 2010), *trans. denied*. Nevertheless, we defer to a trial court's determination of the facts, which will not be overturned unless clearly erroneous. *Belvedere v. State*, 889 N.E.2d 286, 287-88 (Ind. 2008). We do not reweigh the evidence but consider conflicting evidence most favorably to the trial court's ruling. *Id.* at 288.

3

Article I, section 11 provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated . . . ." Although the language of Section 11 is very similar to that of the Fourth Amendment, we interpret and apply it independently from the Fourth Amendment. *Masterson v. State*, 843 N.E.2d 1001, 1006 (Ind. Ct. App. 2006), *trans. denied*. In determining whether police behavior was reasonable under Section 11, courts must evaluate the police conduct under the totality of the circumstances. *Id.* When police conduct is challenged as violating Section 11, the burden is on the State to show that the search or seizure was reasonable under the totality of the circumstances. *State v. Washington*, 898 N.E.2d 1200, 1206 (Ind. 2008). The totality of the circumstances evaluation requires consideration of both the degree of intrusion into the subject's ordinary activities and the basis upon which the officer selected the subject of the search or seizure. *Litchfield v. State*, 824 N.E.2d 356, 360 (Ind. 2005). The determination of the reasonableness of a search and seizure under Section 11 hinges on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation of law has occurred; 2) the degree of intrusion the method of search or seizure imposes on the citizen's ordinary activities; and 3) the extent of law enforcement needs. *Washington*, 898 N.E.2d at 1206.

Here, there was absolutely no evidence of a concern or suspicion that a violation of law had occurred. The evidence shows only that Yanez was at a flea market and was talking loudly to his female companion. The evidence further discloses that Special Agent Rodriguez was the officer who stopped Yanez; however, Special Agent Rodriguez

4

did not testify at the trial of this cause. The State's sole witness was Officer Humerickhouse, who approached Special Agent Rodriguez and Yanez after Yanez had already been stopped and subjected to questioning. Officer Humerickhouse testified that Special Agent Rodriguez was at the flea market that day with regard to immigration enforcement, and she indicated that looking for tattoos is part of the criteria.

The State has failed to fulfill its burden under Article I, Section 11 of the Indiana Constitution to establish the reasonableness of its actions in this case. The State failed to present the testimony of Special Agent Rodriguez, the officer who initiated the stop of Yanez. There was no evidence presented as to why Yanez was stopped or what occurred between him and Special Agent Rodriguez when he was stopped. Thus, this Court is unable to assess the reasonableness of the actions of Special Agent Rodriguez in stopping Yanez.

Further, the evidence that was presented on the State's behalf in the form of the testimony of Officer Humerickhouse also failed to establish the reasonableness of the State's actions. Her testimony showed that Yanez was at a flea market speaking loudly to his female companion and that he apparently had a tattoo. Officer Humerickhouse did not stop Yanez; rather, she approached the two men after Special Agent Rodriguez had stopped Yanez and after he had begun questioning Yanez. The evidence presented by Officer Humerickhouse is her postulation of what occurred between Yanez and Special Agent Rodriguez and does not meet the reasonableness standard. Moreover, her

5

discovery of marijuana *after* Yanez was stopped cannot justify the initial illegal seizure of Yanez by Special Agent Rodriguez.

In addition, although the degree of intrusion on Yanez's activities was minimal, that factor is not sufficient to convert an otherwise unconstitutional stop into a constitutional one. Finally, the extent of the officers' need to investigate was nominal. Nothing had occurred, other than Yanez speaking loudly in a busy public flea market, to trigger a need to investigate.

## CONCLUSION

The State did not carry its burden under Article I, Section 11 of the Indiana Constitution to establish the reasonableness of its actions. We therefore reverse Yanez's conviction and remand for further proceedings consistent with this opinion.

Reversed and remanded.

RILEY, J., concurs.

BARNES, J., concurring in result with separate opinion.

## IN THE
## COURT OF APPEALS OF INDIANA

HERBERT YANEZ,                         )
)
    Appellant-Defendant,       )
)
        vs.                     )     No. 49A02-1104-CR-362
)
STATE OF INDIANA,             )
)
    Appellee-Plaintiff.         )

**BARNES, Judge, concurring in result**

I concur in result because I agree that without the testimony of Agent Rodriguez, we are left to wonder what triggered his initial approach to Yanez other than the "loud" talking Yanez allegedly was engaged in with his female companion. Without more, the State fails in its burden as the majority describes. However, I part company with the analysis regarding "reasonableness" and the "seizure" of Yanez.

If this case solely involved Officer Humerickhouse and her discovery of marijuana on Yanez's person, we would have a much different case. It doesn't, and thus this result.

7

Generally, police officers are not prohibited, under either the United States or Indiana Constitutions, from approaching persons in public places and asking them questions. See Powell v. State, 912 N.E.2d 853, 862-63 (Ind. Ct. App. 2009). Where an encounter such as this is "consensual," the officer has not seized anyone and there are no constitutional implications. Id. Moreover, when Officer Humerickhouse approached Yanez, she noticed that he smelled "strongly" of burnt marijuana. Tr. p. 24. This certainly would have warranted further investigation into whether Yanez possessed marijuana, possibly even including a search of his person. See Edmond v. State, 951 N.E.2d 585, 591 (Ind. Ct. App. 2011).

However, Yanez already was speaking with Agent Rodriguez when she decided to approach Yanez; the question is whether Agent Rodriguez had seized him.[1] Circumstances that might indicate a seizure may include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the suspect by an officer, or the use of language or tone of voice indicating that compliance with an officer's request might be compelled. Powell, 912 N.E.2d at 860 (quoting United States v. Mendenhall, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877 (1980)). Without Agent Rodriguez's testimony, it is very difficult to assess whether any of these circumstances

---

[1] I note that although Agent Rodriguez is a federal law enforcement official, Indiana seems to adhere to the view that the protections of the Indiana Constitution apply to actions of federal officials with respect to state criminal prosecutions. See Moran v. State, 644 N.E.2d 536, 538-39 (Ind. 1994), abrogated on other grounds by Litchfield v. State, 824 N.E.2d 356 (Ind. 2005).

8

existed,[2] whether he had seized Yanez, and, thus, whether Yanez continued to be seized when Officer Humerickhouse approached. We know nothing directly of what Agent Rodriguez said to Yanez. Even if Yanez had been seized, it would not necessarily have been an illegal seizure if Agent Rodriguez possessed reasonable suspicion or probable cause of wrongdoing to support the seizure. See id. at 859. Without Agent Rodriguez's testimony, we cannot assess that question.

As the proponent of evidence recovered during a warrantless search, it was the State's burden to prove that that search was constitutional. See Willis v. State, 780 N.E.2d 423, 428 (Ind. Ct. App. 2002). Although we can speculate that Yanez's initial encounter with Agent Rodriguez might have been "consensual," as that word is defined by case law, I believe it was the State's burden to establish that it was. Without Agent Rodiguez's testimony, the State failed to meet that burden. Thus, I concur in result.

---

[2] Officer Humerickhouse testified that there were "several" officers in the vicinity where Yanez was being questioned, but less than five. Tr. p. 22.