## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 27 2019, 10:25 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Scott H. Duerring<br>South Bend, Indiana | Curtis T. Hill, Jr.<br>Attorney General of Indiana<br><br>Monika Prekopa Talbot<br>Supervising Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Maurice Patterson,<br>*Appellant-Defendant*,<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff*. | March 27, 2019<br><br>Court of Appeals Case No.<br>18A-CR-2024<br><br>Appeal from the St. Joseph Superior Court<br><br>The Honorable Jane Woodward Miller, Judge<br><br>Trial Court Cause No.<br>71D01-1707-F6-685 |

**Brown, Judge.**

[1] Maurice Patterson appeals his drug possession convictions and asserts the trial court admitted evidence in violation of the Fourth Amendment and the Indiana Constitution. We affirm.

## *Facts and Procedural History*

[2] At approximately 2:30 a.m. on July 26, 2017, a person who worked part-time as security at an apartment building in South Bend called 911 and reported a vehicle which he thought might be involved in drug dealing. The police responded to the location at approximately 2:47 a.m., but the vehicle had already left the area. At approximately 3:21 a.m., the security guard again called 911 and reported that the vehicle was back and that he thought the occupants were dealing and the vehicle was involved in a possible hit and run. South Bend Police Officer Michael Stuk arrived at the location,[1] exited his patrol vehicle,[2] and began to walk toward the apartment building. As Officer Stuk walked between a pickup truck and a silver four-door silver sedan in the parking lot, the security guard pointed to the sedan next to the officer. Officer Stuk saw Patterson seated in the front passenger seat and another person laying down in the rear. The front driver and passenger windows were down, and the rear windows were up. Officer Stuk did not have his firearm displayed or in his

---

[1] The security guard testified the first officer arrived at the scene approximately three minutes after he called 911. When asked "if the dispatch records say unit SBP 314 dispatched 4:13:21," Officer Stuk testified "[t]here could be a time lag between dispatch actually putting me on scene and me being on scene." Transcript Volume I at 203.

[2] When asked "if your lights were on, or off" and "Let me rephrase. Not your headlights but your red and blue sirens," Officer Stuk replied "Off." Transcript Volume I at 175.

hands. He immediately noticed a bag containing a green leafy substance which he believed was marijuana hanging out of the left front pocket of Patterson's shirt. Upon observing the bag, Officer Stuk reached in, grabbed the bag from Patterson's pocket, placed it on top of the vehicle, and asked Patterson to exit the vehicle. Officer Stuk observed Patterson slowly reach up and remove another bag from the right pocket of his shirt, and Officer Stuk grabbed the bag from Patterson and placed it on top of the vehicle. Patterson exited the vehicle, and Officer Stuk asked Officer Anthony Dawson who had arrived at the location to handcuff Patterson.

[3] Officer Dawson instructed Patterson to place his hands behind his back, and Patterson turned and charged toward Officer Dawson. Patterson and Officer Dawson went to the ground, Officer Dawson deployed his Taser but it was knocked from his hand, other officers became involved, and Officer Dawson sprayed Patterson with pepper spray at which point Patterson became compliant. The bag which had been in Patterson's left shirt pocket contained a synthetic cannabinoid, and the bag which had been in his right shirt pocket contained Oxycodone tablets, heroin, and cocaine.

[4] The State alleged in an amended information that Patterson committed: Count I, possession of cocaine as a level 6 felony; Count II, possession of narcotic drug hydrocodone as a level 6 felony; Count III, possession of narcotic drug heroin as a level 6 felony; Count IV, resisting law enforcement as a class A misdemeanor; Count V, possession of narcotic drug heroin as a level 5 felony; and Count VI, possession of a synthetic drug as a class A misdemeanor.

[5] On June 8, 2018, the court held a hearing on a motion to suppress filed by Patterson and denied the motion. At Patterson's bench trial, Officer Stuk testified that the security guard pointed to the four-door silver sedan, that he used his flashlight to aid his view, and "I was looking to see if it was occupied as I was walking by it at that time." Transcript Volume I at 199. When asked "how long did it take when you were looking at Mr. Patterson to notice something suspicious about him," Officer Stuk replied "[m]atter of seconds." *Id*. at 179. He testified that Patterson turned towards him, that he saw a bag hanging from Patterson's left shirt pocket which contained a green leafy substance, and that he believed the substance was marijuana. When asked "[u]pon seeing marijuana, what did you do," Officer Stuk testified "I reached in and grabbed it out of his pocket and put it on top of the vehicle." *Id*. at 180. Officer Stuk indicated he had been to the apartment address numerous times related to drugs, overdoses, and fights. The court admitted the drugs found on Patterson over his objection and found him guilty under Counts I through IV and VI and not guilty under Count V. Patterson was sentenced to eighteen months suspended for each of his convictions under Counts I through III and twelve months suspended for each of his convictions under Counts IV and VI. The court ordered the sentences under Counts I, II, III, and VI to be served concurrently and the sentence under Count IV to be served consecutively for an aggregate sentence of thirty months suspended, and that Patterson be placed on probation for thirty months.

### *Discussion*

[6] The issue is whether the trial court abused its discretion in admitting the evidence found on Patterson. Although Patterson originally moved to suppress the evidence, he now challenges the admission of the evidence at trial. Thus, the issue is appropriately framed as whether the trial court abused its discretion by admitting the evidence. *See Guilmette v. State*, 14 N.E.3d 38, 40 (Ind. 2014). Because the trial court is best able to weigh the evidence and assess witness credibility, we review its rulings on admissibility for abuse of discretion and reverse only if a ruling is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights. *Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014). The ultimate determination of the constitutionality of a search or seizure is a question of law that we consider de novo. *Id*. In ruling on admissibility following the denial of a motion to suppress, the trial court considers the foundational evidence presented at trial. *Id*. If the foundational evidence at trial is not the same as that presented at the suppression hearing, the trial court must make its decision based upon trial evidence and may consider hearing evidence only if it does not conflict with trial evidence. *Guilmette*, 14 N.E.3d at 40 n.1.

[7] Patterson argues that his encounter with police was not consensual and the police did not have reasonable suspicion of criminal activity, the police action was unreasonable, and as such the evidence seized from him should not have been admitted. The State responds that no constitutional violation occurred and the court properly admitted the evidence.

The Fourth Amendment to the United States Constitution guarantees the right to be secure against unreasonable search and seizure. *Powell v. State*, 912 N.E.2d 853, 859 (Ind. Ct. App. 2009). There are three levels of police investigation, two of which implicate the Fourth Amendment and one of which does not. *Id.* First, the Fourth Amendment requires that an arrest or detention that lasts for more than a short period of time must be justified by probable cause. *Id.* Second, pursuant to Fourth Amendment jurisprudence, the police may, without a warrant or probable cause, briefly detain an individual for investigatory purposes if, based upon specific and articulable facts, the officer has a reasonable suspicion that criminal activity has or is about to occur. *Id.* The third level of investigation occurs when a police officer makes a casual and brief inquiry of a citizen, which involves neither an arrest nor a stop. *Id.* This is a consensual encounter in which the Fourth Amendment is not implicated. *Id.*

Not every encounter between a police officer and a citizen amounts to a seizure requiring objective justification. *Id.* A person is seized only when, by means of physical force or a show of authority, his or her freedom of movement is restrained. *Id.* It is not the purpose of the Fourth Amendment to eliminate all contact between police and citizens. *Id.* at 860. What constitutes a restraint on liberty prompting a person to conclude that he or she is not free to leave will vary depending upon the particular police conduct at issue and the setting in which the conduct occurs. *Id.* Examples of circumstances that might indicate a seizure where the person did not attempt to leave would be the threatening presence of several officers, the display of a weapon by an officer, some physical

touching of the person, or the use of language or tone of voice indicating compliance with the officer's request might be compelled; if such evidence is lacking, otherwise inoffensive contact between a member of the public and the police does not amount to a seizure of that person. *Id.*

[10] In *R.H. v. State*, a police officer responded to a dispatch reporting a suspicious vehicle parked in front of a caller's residence. 916 N.E.2d 260, 262 (Ind. Ct. App. 2009), *trans. denied*. The officer parked and activated his emergency lights. *Id.* The officer approached the suspicious vehicle, observed heavy smoke inside, and knocked on a rear window. *Id.* The window rolled down, and the officer immediately recognized the smell of burnt marijuana. *Id.* The officer had the occupants exit the vehicle. *Id.* at 263. The officer observed two bags containing what appeared to be marijuana in the front passenger footwall. *Id.* R.H. argued on appeal the seizure of the marijuana violated the Fourth Amendment. *Id.* We observed the officer had received a dispatch late at night regarding a report of a suspicious vehicle, the vehicle was parked in front of the caller's residence, and the officer found a vehicle matching the description given already stopped and parked, activated his emergency lights, and then approached the vehicle to ask the occupants some questions or request their identification. *Id.* at 264-265. We held "these are all procedures that an officer would be expected to do upon finding an occupied vehicle parked on the street late at night, and do not indicate to a reasonable motorist that the officer intends to detain him." *Id.* (internal quotation marks and citations omitted). We held the officer's approach and initial contact with R.H. did not constitute a

seizure or an investigatory stop, we thus did not need to address whether the officer had reasonable suspicion to conduct an investigatory stop, and the trial court did not abuse its discretion in admitting the evidence. *Id*. at 266.

[11] In *Powell v. State*, an officer noticed a vehicle parked on the side of the street, pulled behind the vehicle in his squad car but did not activate his emergency lights, and exited his squad car and approached the vehicle. 912 N.E.2d at 856-857. Upon his initial approach, the officer observed the vehicle's windows were down, a spent shell casing in the back seat, and an open bottle of vodka in the vehicle. *Id*. at 857. Officers eventually had the occupants exit the vehicle for safety reasons, one of the officers observed in plain view baggies containing a green leafy substance which appeared to be marijuana on the floorboard, and the defendant was placed in handcuffs. *Id*. at 857-858. Powell argued on appeal that the officer's initial approach towards the vehicle constituted an investigatory stop and an illegal seizure under the Fourth Amendment. *Id*. at 859. We first noted that law enforcement's approach to a parked vehicle does not in itself constitute an investigatory stop or a seizure for purposes of the Fourth Amendment. *Id*. at 861-862 (collecting federal and state cases). We then observed that the vehicle in which Powell was seated was parked on the side of a street, the officer was in police uniform but did not activate his squad vehicle's emergency lights, and the record did not reflect that the officer displayed a weapon as he approached the vehicle or used any language or spoke in a tone of voice which mandated compliance. *Id*. at 862. We concluded that the officer's approach to the parked vehicle and initial contact with Powell did

not constitute an investigatory stop or a seizure under the Fourth Amendment and that therefore the officer did not have to possess reasonable suspicion of wrongdoing in order to park behind or approach Powell's vehicle in order to ask him his purpose for being in the area. *Id*. We held the trial court did not abuse its discretion in admitting the evidence. *Id*. at 864.

[12] Here, the record reveals that Officer Stuk was dispatched to an apartment building in the early morning in response to a report by a security guard regarding a vehicle near the building and that the security guard thought the occupants were dealing. As Officer Stuk was walking toward the apartment building, the security guard pointed to the specific vehicle in which Patterson was an occupant. The record does not reflect that Officer Stuk, in initially approaching the vehicle, displayed a show of authority. His approach to the parked vehicle and initial encounter with Patterson did not constitute an investigatory stop or a seizure and thus he did not have to possess reasonable suspicion of wrongdoing in order to approach the vehicle. *See R.H.*, 916 N.E.2d at 264-266; *Powell*, 912 N.E.2d at 857-862. As soon as Patterson turned toward him, the officer observed the bag containing what he believed to be marijuana hanging out of one of Patterson's shirt pockets. When the bag and its contents became visible to Officer Stuk, seizure of the bag was proper pursuant to the plain view doctrine. *See Powell*, 912 N.E.2d at 863 ("When the small baggies containing marijuana in the vehicle became visible to the officers, seizure of the marijuana was proper pursuant to the 'plain view doctrine.'"); *Crabtree v. State*, 762 N.E.2d 217, 218-221 (Ind. Ct. App. 2002) (holding a baggie containing

green leafy vegetation hanging from the front pouch of the defendant's sweatshirt was immediately apparent to an officer and the plain view doctrine supported the seizure of the marijuana from the defendant).

[13] With respect to Article 1, Section 11 of the Indiana Constitution, we focus on whether the officer's conduct was reasonable in light of the totality of the circumstances. *Powell*, 912 N.E.2d at 863. In making this determination, we balance: the degree of concern, suspicion, or knowledge that a violation has occurred; the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities; and the extent of law enforcement needs. *Id.* Officer Stuk approached the vehicle in which Patterson was seated on foot in response to a call during the early morning by a security guard at an apartment building. The security guard thought the occupants were dealing drugs, Officer Stuk had been to the apartment building numerous times, and Officer Stuk did not display a weapon when he approached the vehicle. We conclude in light of the totality of the circumstances that Officer Stuk's approach and initial contact with Patterson did not violate Article 1, Section 11 of the Indiana Constitution. *See Powell*, 912 N.E.2d at 863 (holding the officer simply approached the vehicle on foot and did not display a weapon as he approached and that the officer's approach and initial contact with the defendant constituted a consensual encounter which did not violate his rights against unreasonable search or seizure under Article 1, Section 11 of the Indiana Constitution). The trial court did not abuse its discretion in admitting the evidence found on Patterson.

[14] For the foregoing reasons, we affirm Patterson's convictions.

[15]     Affirmed.

Bailey, J., and Bradford, J., concur.